**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

FELICIA JOYNER,

    Plaintiff,

vs.                                                                                           CASE NO.  3:10-cv-255-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

**ORDER AND OPINION**

        This matter is before the Court on Plaintiff's Complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") that denied Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") disability payments.  Plaintiff filed a legal brief in support of the complaint (Doc. #14).  Defendant filed his brief in support of the decision to deny disability benefits (Doc. #15).  Both parties consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated June 14, 2010 (Doc. #12).   The Commissioner has filed the transcript of the underlying administrative proceedings and evidentiary record  (hereinafter referred to as "Tr." followed by the appropriate page number).

        Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in its making its determinations.  Accordingly, the matter has been decided on the written record.  For the reasons set out herein, the decision is **REVERSED and the case is REMANDED for**

**further proceedings**.

## PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI with the Social Security Administration on March 21, 2003 (Tr. 66-68, 869-71). Plaintiff alleged an onset of disability of January 27, 2003. *Id.* The applications were denied initially and upon reconsideration. Thereafter, Plaintiff timely requested a hearing, which was originally scheduled for February 7, 2006, but continued without testimony so the administrative law judge ("ALJ") could obtain a medical expert to testify (Tr. 902-04). The administrative hearing was ultimately held on November 21, 2006, in Jacksonville, Florida before ALJ Edward Bayouth-Babilonia (Tr. 905-988). Plaintiff appeared and testified at the hearing, as did vocational expert ("VE") Mr. Robert Bradley and medical expert ("ME") Dr. Herbert Copeland.[1] Plaintiff' was represented at the administrative hearing by Ms. Susan Butler, a non-attorney representative (Tr. 24, 905)  The ALJ issued his decision denying Plaintiff's claims for DIB and SSI on April 27, 2007 (Tr. 11-23). Plaintiff requested review of the hearing decision by the Appeals Council; however, the review was denied (Tr. 6-9). Thus, the ALJ's hearing decision became the final decision of the Commissioner. Thereafter, Plaintiff's current counsel of record, Mr. L. Jack Gibney, Esq., filed the instant complaint in federal court on March 24, 2010.

## SOCIAL SECURITY ACT ELIGIBILITY
## AND THE STANDARD OF REVIEW

A plaintiff may be entitled to disability benefits when he or she is unable to engage

---

[1]The Court notes the medical expert's name is spelled as "Copeland" throughout the hearing transcript, but is spelled as "Copelan" throughout the ALJ's decision. This error is not significant.

in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less that 12 months.  20 C.F.R. § 404.1505.[2]  The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 404.1520; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The plaintiff bears the burden of persuasion through Step 4, while at Step 5, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 127, 146 n.5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of facts are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  Substantial evidence is comprised of relevant evidence that a reasonable person would accept as adequate to support a conclusion.  *Foote*, 67 F.3d at 1560; *Moore*, 405 F.3d at 1211.

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's

---

[2]Unless otherwise specified, all references to 20 C.F.R. will be to the 2011 edition. As the Regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. pertaining to part 404 and disability insurance benefits.

decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

In all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

**BACKGROUND AND ANALYSIS**

Plaintiff was born on February 4, 1972 (Tr. 66, 909).  Thus, at the time of the ALJ's decision Plaintiff was thirty-four (34) years old.  According to her testimony, Plaintiff graduated from high school and obtained secretarial skills thereafter (Tr. 910).  Plaintiff has past relevant work as a secretary, a clerk who also drove a van on the job, a mail clerk, and a day care worker (Tr. 120-27, 912-918, 981). Plaintiff stated in her Disability Report - Adult that she suffers from lupus, a blood disorder, a blood clot on the heart, and body aches and pains that limit her ability to work (Tr. 99).  In responding to the question, "How does your condition keep you from working?" on a Social Security pain questionnaire form, Plaintiff wrote that she was "weak and tired" and had "shortness of breath" (Tr. 132).

The ALJ found Plaintiff was not disabled under the Social Security Act at step four of the five step sequential evaluation process. Relying in part on the vocational expert testimony and the medical expert testimony, ALJ Bayouth-Babilonia determined Plaintiff could return to her past relevant work despite her severe impairments (Tr. 22).  The ALJ found Plaintiff had the severe impairments of: systemic lupus erythematosus,[3] diabetes, hypertension, obesity, status post meniscus tear of her right knee with status post right

---

[3]Systemic lupus erythematosus ("SLE") is defined as: "an inflammatory connective tissue disease with variable features, frequently including fever, weakness and fatigability, joint pains or arthritis resembling rheumatoid arthritis, diffuse erythematous skin lesions on the face, neck, or upper extremities, with liquefaction degeneration of the basal layer and epidermal atrophy, lymphadenopathy, pleurisy or pericarditis, glomerular lesions, anemia, hyperglobulinemia, and a positive LE cell test result, with serum antibodies to nuclear protein and sometimes to double-stranded DNA and other substances."  *See* http://www.medilexicon.com/medicaldictionary.php (last visited Sept. 26, 2011).

knee arthroscopy, status post cardiac catheterization with thrombus[4] in the left anterior descending artery (Tr. 17).

Plaintiff argues two issues on appeal.  First, Plaintiff asserts the ALJ erred by not considering the medical evidence as a whole.  In this respect, Plaintiff claims the ALJ selected "favorable statements from the records" and disregarded contrary evidence (Doc. #14 at 6-12).  As one example of the asserted selective evidence consideration, Plaintiff argues the ALJ failed to include any difficulties with Plaintiff's grip strength or hands, or the ability to push and pull with her extremities, in his determination of her residual functional capacity ("RFC") and in the hypothetical questions to the vocational expert (Doc. #14 at 9).  In her second issue of error, Plaintiff claims the ALJ's findings are inconsistent with the VE's testimony.  Here, Plaintiff points to the inconsistency between finding she could perform the past relevant work of a van driver, day care worker and mail clerk, and the VE's testimony that those jobs fell within medium work, while the ALJ found Plaintiff retained the capacity "for work at the sedentary level of exertion" (*see* Doc. #14 at 12-13; *compare* Tr. 17, Finding No. 5 *with* Tr. 22, Finding No. 6).

Defendant counters by arguing substantial evidence supports the finding Plaintiff retained the RFC to perform sedentary work and the finding Plaintiff could perform her past relevant work (*see generally*, Doc. #15).  More particularly, Defendant asserts the ALJ "considered the medical records provided by Plaintiff's main treating physician, Dr. Reza

---

[4]A thrombus is defined as, "A clot in the cardiovascular systems formed during life from constituents of blood; it may be occlusive or attached to the vessel or heart wall without obstructing the lumen (mural thrombus)."  See http://www.medilexicon.com/medicaldictionary.php  (last visited Sept. 26, 2011).

M. Taba," along with the opinions of two consulting examiners, the testimony of the medical expert, and the opinion of a reviewing physician to determine Plaintiff's symptoms would not preclude her from performing secretarial work activities (Doc. #15 at 5-6). Defendant further argues the ALJ committed no error in failing to include restrictions on Plaintiff's ability to push and pull, or in the use of her hands, because the additional restriction would not eliminate any of the jobs identified that Plaintiff could perform (Doc. #15 at 14-15).

Upon its independent review of the ALJ's decision and the record evidence, the Court finds merit in some of Plaintiff's arguments and finds Defendant's arguments overlook flaws in the ALJ's decision that require the case be remanded for reconsideration. In particular, the Court's review of the record as a whole, as required under *Bloodsworth v. Heckler*, 703 F.2d at 1239, reveals the ALJ has misstated or misconstrued the record on a number of points, has failed consider a substantial portion of the record evidence, and has made contradictory findings of fact. Thus, the ALJ's decision was not reached in accordance with the Regulations and the law of this circuit, and is not supported by substantial evidence.

### ***Overall Evaluation of the Medical Evidence***

Consideration of all the evidence of record is mandated so that the ALJ can accurately determine a claimant's RFC and thereby determine if the claimant can return to past relevant work. *See* 20 C.F.R. § 404.1527(b) ("In deciding whether you are disabled, we will always consider the medical opinions in your case record together will the rest of the relevant evidence we receive."); 20 C.F.R. § 404.1529(a) (". . . we will consider all of the available evidence. . ."); 20 C.F.R. § 404.1545(a) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."). The focus

of a residual functional capacity determination is on the objective medical findings made by a plaintiff's doctors and their analysis based on those findings. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An ALJ may not pick and choose which evidence he considers in making the disability determination. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). The plaintiff has the burden of providing the medical and other evidence about his or her impairments for the ALJ to use in reaching his conclusions. 20 C.F.R. § 404.1512(a). The Regulations direct the administrative law judges to "consider all evidence in [the claimant's] case record when [making] a determination or decision whether [the claimant is] disabled." 20 C.F.R. § 404.1520(a)(3).

In the instant action, Plaintiff has provided a plethora of record evidence, but the ALJ's decision is devoid of reference to a significant portion of the medical evidence of record. In an administrative record comprised of thirty-one (31) medical records exhibits, there is scarce indication in the ALJ's decision that he considered thirteen (13) of those thirty-one exhibits.[5] Review of the decision reveals there is no specific mention of at least four of Plaintiff's treating physicians,[6] nor is there reference to the progress notes and other

---

[5]The ALJ stated he gave "careful consideration to all of the evidence" (Tr. 15) and he refers to the expert opinion evidence provided "by the State Agency doctors" (Tr. 22), indicating consideration of all three reviewing doctors' RFC assessments despite explicitly referring to a single State Agency physician (*see* Tr. 21-22). Other than consideration of "all the evidence," the Court does not find any explicit or implicit reference to exhibits 1F-4F, 7F, 9F, 10F, 12F, 13F, 17F, 19F, 26F and 27F.

[6]Dr. R. Stephan Lucie, M.D. (Tr. 184-96) (placed Plaintiff on work restrictions in 2002; treated Plaintiff for knee injury and pain, which ALJ found were severe impairments); Dr. Unni Thomas, M.D. (Tr. 308-26) (treated Plaintiff for idiopathic thrombocytopenia purpura); Dr. Gil Cu, M.D. (Tr.591-646) (internal medicine and nephrology; treated Plaintiff from February 2000 through February 2005; records include kidney biopsy); and, Dr. Yousif Abubaker, M.D. (Tr. 647-720) (hematology and oncology; treatment for weakness, fatigue, decreased platelets, idiopathic thrombocytopenia purpura).

evidence contained in the record from these physicians.  While the lack of reference to specific record evidence may not warrant remand standing alone, as discussed *infra*, there are additional errors that when considered together do require remand.

Plaintiff has not directly challenged the accuracy of the assessed residual functional capacity, but has noted some of the misstatements of the record contained within the ALJ's decision to deny benefits and has challenged the ALJ's consideration of the medical evidence from Plaintiff's treating physicians (*see* Doc. #14 in general).  The Court's review of the decision and the underlying administrative record confirms the ALJ's decision contains a number of misstatements.

As detailed below, the ALJ's references to the medical evidence contain errors that call into question whether the ALJ carefully considered all the evidence of record.  As noted in *Owens v. Heckler*, 748 F.2d 1511, 1514 (11th Cir. 1984), the evaluation of the Court centers on the adequacy of the decision rendered by the ALJ.  "A clear articulation of both fact and law is essential to [the court's] ability to conduct a review that is both limited and meaningful." *Id.* at 1514-15. The ALJ's decision in the instant action is not sufficient for the Court to conduct its required review.

Flaws in the ALJ's findings are most noticeable in his consideration of Plaintiff's medical evidence.  For example, the ALJ states the Plaintiff was discharged on February 13, 2003 "on aspirin and Plavix" (Tr. 19).  Review of the record to which the ALJ refers, Exhibit 6F at page 45, reveals Plaintiff was discharged from Memorial Hospital on that date after a ten day stay and she was discharged on Prevacid, Prednisone, Plavix, Reglan, multivitamin with iron, and aspirin (Tr. 267).

The ALJ also found,

> On March 11, 2003, a cardiac evaluation revealed that [Plaintiff's] chest pain [had] resolved and she was doing well on aggressive antiplatelet therapy (Exhibit 8F/7). Progress notes from Dr. Kevin Hunger, M.D., dated January 12, 2004, revealed that she had not had any subsequent episodes of chest pain and she was not short of breath (Exhibit 22F/3). Dr. Hunger noted that [Plaintiff] was stable and asymptomatic (Exhibit 22F/4).

(Tr. 19.) These findings do not accurately portray the substance of the referenced progress notes or Plaintiff's medical history. On January 12, 2004, Dr. Hunger noted Plaintiff is:

> a lady with Evans syndrome, autoimmune hemolytic anemia, and ITP (idiopathic thrombocytopenic purpura). . . . She received Ferrlecit last month and 24 hours later she had severe chest pain. Cardiology evaluated her in the hospital and thought the pain might be due to Ferrlecit. She has had no subsequent episodes of chest pain. She comes in today feeling well and is not short of breath, but has had a few nosebleeds.

(Tr. 489.) A plain reading of this progress note shows Dr. Hunger was referring to no subsequent episodes of chest pain since the prior month, not since March 11, 2003, as is implied by the ALJ's language. In the treatment plan on January 12, 2004, Dr. Hunger noted, "Since she is stable and asymptomatic, we will follow her carefully with observation. Should she have exacerbation of Evans syndrome,[7] consideration could be given to revisiting splenectomy" (Tr. 490).

The ALJ found that on September 24, 2003, Dr. Joel Stone, M.D., noted that Plaintiff

---

[7]Evans syndrome is "acquired hemolytic anemia and thrombocytopenia." *See* http://www.medilexicon.com/medicaldictionary.php (last visited Sept. 27, 2011). Thrombocytopenia is a "condition in which an abnormally small number of platelets is present in the circulating blood." *See* http://www.medilexicon.com/medicaldictionary.php (last visited Sept. 27, 2011).

"did not have active hemolysis[8] and that her thrombocytopenia was mild to moderate and stable and did not require treatment (Exhibit 11F/12)" (Tr. 19).  A closer reading of that treatment note reveals Dr. Stone actually reported Plaintiff "with questionable hemolysis" (Tr. 355), and noted "but with _____ for active hemolysis" (Tr. 356) (blank in the original).  Dr. Stone further stated, "she may very well just have a positive Coombs test without ongoing hemolysis with autoimmune thrombocytopenia" (Tr. 356), but concluded, "*assuming the patient does not have active hemolysis*, her mild to moderate, but stable thrombocytopenia does not require treatment" (Tr. 356) (emphasis added).  Dr. Stone thus determined that Plaintiff's thrombocytopenia did not require treatment if the assumption she did not have active hemolysis was true.  The ALJ's finding regarding Dr. Stone's treatment notes on September 24, 2003 does not accurately reflect what was reported in the notes.

The ALJ found, "In [sic] July 12, 2004, Dr. Taba stated she had not seen the Plaintiff/claimant since May 7, 2003" (Tr. 20).  In actuality, Dr. Taba stated Joyner had not been seen "in this office since May of last year," but Dr. Taba "had seen [Plaintiff] in the hospital about a month ago when she was admitted to the hospital for abdominal pain" (Tr. 588).  Within the same paragraph in the ALJ's decision, the ALJ stated, "When seen in [sic] September 2, 2004, [Plaintiff] was generally feeling well and the examination of her joints was normal. (Exhibit 25F/13)" (Tr. 20).  A closer review of the September 2 treatment note finds Dr. Taba stated, "Ms. Joyner presents for follow-up on aches and pains.  She is

---

[8]Hemolysis is "[a]lteration, dissolution, or destruction of red blood cells in such a manner that hemoglobin is liberated into the medium in which the cells are suspended, by specific complement-fixing antibodies, toxins, various chemical agents, tonicity, alteration of temperature."  *See* http://www.medilexicon.com/medicaldictionary.php?t=40168 (last visited Sept. 27, 2011).

generally feeling well. States that she is tired all the time and she cannot sleep. Effexor makes her very nauseated." (Tr. 579.) Dr. Taba goes on to assess, "Overall, Ms. Joyner appears to be doing poorly with the problems as reviewed." *Id.* With reference to another of Dr. Taba's treatment notes, the ALJ found, "On October 29, 2004, Dr. Taba again noted no abnormality in any joints (Exhibit 25F/9)" (Tr. 20). Here, the ALJ again fails to discuss Dr. Taba's overall assessment that Plaintiff was doing poorly with the problems reviewed, nor does he address that Plaintiff presented for follow-up on fibromyalgia and SLE, not just a joint examination (*see* Tr. 575)

The ALJ's references to Dr. Taba's and Dr. Hunger's treatment notes of Plaintiff have isolated certain aspects of the notes, while ignoring other statements which are contrary to the ALJ's findings. It appears to the undersigned that ALJ Bayouth-Babilonia has relied on select information within Plaintiff's treatment/progress notes to support his decision, while ignoring contrary evidence. Selective reliance on only a limited part of the record, while ignoring other parts, is not permitted. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).

Each misstatement of the record, when viewed in isolation, would not constitute such error as to require reversal. However, the misstatements taken as a whole and the lack of reference to other medical evidence indicate the ALJ failed to properly consider all the evidence.[9]

Clearly the ALJ is not required to specifically refer to every piece of evidence in his

---

[9]The Court has not addressed each and every factual finding that relies on the ALJ's flawed construction of the evidence to support the decision to deny disability benefits. The instances discussed are illustrative of the overall problems found with the ALJ's decision in this matter.

decision. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The ALJ is required, however, to consider all the presented evidence in making his findings and the ultimate disability determination. The ALJ's decision in this case is silent on a large amount of medical evidence provided by the Plaintiff. Although the ALJ has wide latitude to evaluate the weight of the evidence, he must do so in accordance with prevailing precedent. In this case it appears the ALJ may have disregarded a significant portion of the medical record evidence without stating any reason and the Court is left to wonder if correct legal standards were applied in his analysis of the evidence.

Even if the record contains substantial evidence favorable to the Commissioner, that "may not insulate the ALJ's determination from remand when he or she does not provide a sufficient rationale to link such evidence to the legal conclusions reached." *Russ v. Barnhart*, 363 F.Supp. 2d 1345, 1347 (M.D. Fla. 2005). Such is the case in this matter. Thus, the Court does not find the decision of the ALJ is based on substantial evidence and this case must be remanded to the Commissioner for reevaluation of the record as a whole.

### ***Conflicting Findings and Harmless Error***

Plaintiff points out the ALJ committed additional error by making conflicting findings in the decision to deny benefits (Doc. #14 at 12-13). In assessing Plaintiff's residual functional capacity, the ALJ found Plaintiff could perform "work at the sedentary level of exertion" (Tr. 17, Finding No. 5). However, the ALJ also found, "The [Plaintiff/claimant] is capable of performing past relevant work as a secretary, a van driver, a day care worker, and a mail clerk" (Tr. 22, Finding No. 6). The vocational expert testified the job of a van driver is medium exertion, semi-skilled work (Tr. 981), the job of a day care worker is classified as light duty but was performed by Plaintiff at the sedentary level (Tr. 982), and

13

the mail clerk is a light duty, unskilled job (Tr. 982). Obviously, substantial evidence cannot support the ALJ's conflicting findings that Plaintiff can perform jobs in the medium and light exertional categories when she is limited to sedentary work.[10]

Defendant does not challenge the error, but instead argues it is harmless error for the ALJ to have found Plaintiff could perform past relevant work at differing exertional levels (Doc. #15 at 17-19). Defendant relies on the proposition that because the ALJ found Plaintiff could perform the work of a secretary at the sedentary level, his error in finding Plaintiff retained the capacity to work as a van driver and as a mail clerk is harmless. *Id.*

While Defendant's argument is somewhat persuasive, it ultimately fails in this case. Various courts, including this one, have addressed harmless error with their findings. In *Diorio v. Heckler*, 721 F.2d 726 (11th Cir. 1983), the court found harmless error when the ALJ made erroneous statements of fact, but applied the proper legal standard when considering the vocational factors in application of the GRIDS. *Id.* at 728. In *Wright v. Barnhart*, 153 Fed. Appx. 678 (11th Cir. 2005), the court noted that although the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and normally failure to do so is reversible error, such failure was harmless error when correct application of the Regulations would not contradict the ALJ's ultimate findings. *Id.*

---

[10]Plaintiff also argues the ALJ erred in failing to include push and pull limitations with her upper and lower extremities (Doc. #14 at 9-10). Defendant vigorously argues there was no error in the ALJ's determination to exclude these limitations from Plaintiff's RFC and from the hypothetical questions asked of the vocational expert (Doc. #15 at 13-17). In light of the determination that this case must be remanded for further consideration on other grounds, the Court finds it unnecessary to address this argument. In any event, on remand the Commissioner must reevaluate Plaintiff's RFC upon consideration of all the record evidence.

at 684.[11] This Court found harmless error when the ALJ failed to discuss a treating physician's opinion, but even giving controlling weight to the opinion would not have changed the outcome. *Parton v. Astrue*, No. 3:07-cv-63-J-TEM, 2008 WL 897094 (M.D. Fla. Mar. 31, 2008).

Here, the ALJ's conflicting findings concerning Plaintiff's work capabilities might, standing alone, constitute harmless error. But in this instance, the conflicting findings, combined with the misstatements (or misconstructions) of the record and the lack of reference to a significant portion of the medical evidence, create the necessity for remand and further consideration of Plaintiff's case.

In *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989), the court found no principle of administrative law or common sense requires remand in quest of a perfect opinion unless there is reason to believe the remand might lead to a different result. In *Ward v. Commissioner of Social Security*, 211 F.3d 652, 656 (1st Cir. 2000), the court held that while an error of law by the ALJ may necessitate a remand, a remand is not essential if it will amount to no more than an empty exercise. Here, it is not clear to the Court that remand would amount to an empty exercise. In fact, proper consideration of all the record evidence may impact the assessment of Plaintiff's RFC, which may or may not alter the outcome of Plaintiff's claims.

## CONCLUSION

The Court is precluded from reweighing the evidence anew, but it is nonetheless

---

[11]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

obligated to review the record in its entirety. *Foote*, 67 F.3d at 560. The Court's independent review reveals the record differs from the ALJ's factual findings in the above-mentioned instances, and more. Thus, it is impossible to say the ALJ's decision is supported by substantial evidence

An ALJ is required to build an accurate and logical bridge from the evidence to his conclusion. *Baker v. Barnhart*, No. 03-C-2291, 2004 WL 2032316, *8 (N.D. Ill. Sept. 9, 2004). The ALJ must also "sufficiently articulate" his assessment of the evidence to assure the court that he has considered the important evidence–so that the court may trace the path of the ALJ's reasoning to his conclusion. *Id*. After review of the ALJ's decision and the administrative record, the Court cannot find the ALJ has built the requisite accurate and logical bridge from the evidence to the conclusion.

For the foregoing reasons, the decision of the Commissioner is not supported by substantial evidence or decided according to proper legal standards. Accordingly, the Commissioner's decision is hereby **REVERSED and REMANDED** for additional proceedings consistent with this Order and Opinion.

Upon remand, the Commissioner shall re-evaluate Plaintiff in accordance with the applicable Regulations and prevailing case law. All the medical evidence must be considered and weighed in accordance with the Regulations and prevailing case law, and Plaintiff's residual functional capacity must be reassessed. On remand, the ALJ may desire to reopen the record and accept any additional evidence deemed appropriate, which may include vocational testimony in light of the reassessed RFC. The ALJ may not, however, selectively rely on only a limited part of the record, while ignoring other parts. *See*

*McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).

Plaintiff is cautioned that this opinion does not suggest Plaintiff is entitled to disability benefits. Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).

### Directions as to Judgment

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file.[12]

**DONE AND ORDERED** at Jacksonville, Florida this 29th day of September, 2011.

Copies to all counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

---

[12]If Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) **must be filed within thirty (30) days** of the Commissioner's final decision to award benefits. *See Bergen v. Comm'r Soc. Sec.*, 454 F.3d 1273, 1278 n.2 (11th Cir. 2006) (recognizing under Fed. R. Civ. P. 54(d)(2)(B) the district court may enlarge the time for any attorney to petition for fees and suggesting time be stated in the judgment); *compare with* Fed. R. Civ. P. 54(d)(2)(B) and M.D. Fla. Loc. R. 4.18(a) (both requiring that unless a statute **or court order** provides otherwise, any motion for attorney fees must be filed no later than fourteen (14) days after entry of judgment) (emphasis added). This Order and Opinion does not, however, extend the time limits for filing a motion for attorney fees under the Equal Access to Justice Act.